**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

_____X
In re:                                              :
Kenneth Desormes,                         :        Chapter 7
                                                     :        Case No. 10-50079
      Debtor.                         :
_____X
                                                     :
Kenneth Desormes,                         :
      Plaintiff,                      :
                                                     :
    -v-                                      :        Ad. Pro. No. 10-5014[1]
                                                     :
Charlotte School of Law, Inc.,         :
InfiLaw System,                              :
Frank Toliver,                                 :
Sallie Mae, Inc.,                             :
NelNet, Inc.,                                  :
      Defendants.                  :
_____X

*Appearances*:

| | |
|---|---|
| Kenneth Desormes<br>4-21 Armstrong Court<br>Greenwich, CT 06830 | For Plaintiff/Debtor, *Pro Se* |
| Scott M. Charmoy, Esq.<br>Charmoy & Charmoy<br>1261 Post Road<br>P.O. Box 804<br>Fairfield, CT 06824-0804 | For Defendants<br>Charlotte School of Law, Inc.,<br>InfiLaw System, and<br>Frank Toliver |

**MEMORANDUM OF DECISION AND ORDER ON
PLAINTIFF'S FOURTH AMENDED COMPLAINT,
ALLEGING VIOLATION OF THE AUTOMATIC STAY AND
SEEKING A STUDENT LOAN UNDUE HARDSHIP DETERMINATION**

---

[1] Adversary Proceeding No. 10-5014 has been administratively consolidated with Adversary Proceeding Nos. 10-5025 and 10-5094.  *See* ECF No. 79, ECF No. 122; *see also infra* at 2-3.

## Introduction

Plaintiff/Debtor Kenneth Desormes filed the instant multi-count Fourth Amended Complaint ("Complaint") alleging, *inter alia*, violation of the automatic stay, 11 U.S.C. § 362(a) ("Count I: Stay Violation"), and seeking an undue hardship determination in order to discharge student loan debts, 11 U.S.C. § 523(a)(8) ("Count II: Undue Hardship").  The defendants,[2] Charlotte School of Law, Inc. ("CSOL"), InfiLaw System, and Frank Toliver, denied those allegations.  For the reasons stated herein, judgment shall enter in favor of the defendants.

## Background

Between January 2007 and January 2010, the plaintiff attended CSOL, a for-profit law school which was not accredited by the American Bar Association during that period.  The plaintiff incurred over $100,000 in debt to finance his tuition obligations, including a $12,122 promissory note to CSOL which he executed on August 25, 2008 ("Note"; *see* Pl.'s Trial Exhibit G).

On January 14, 2010, the plaintiff filed for bankruptcy relief under chapter 7 of the Bankruptcy Code.[3]  On February 19, 2010, the plaintiff commenced his first adversary proceeding, Ad. Pro. No. 10-5014, under 11 U.S.C. § 523(a)(8), for a determination that his student loans were dischargeable ("First Dischargeability Action").  On April 7, 2010, the plaintiff commenced a second adversary proceeding, Ad. Pro. No. 10-5025, under 11 U.S.C. § 362(k), for compensatory and punitive damages, alleging that defendant CSOL violated the automatic stay ("Stay Violation Action").  On October 8, 2010, those adversary proceedings were administratively

---

[2] Sallie Mae, Inc., and NelNet, Inc., are no longer defendants in this adversary proceedings.  *See* Aug. 19, 2010 Order (ECF No. 51)(approving settlement stipulation and dismissing Sallie Mae); May 15, 2012 Order (ECF No. 179) (dismissing Nelnet, Inc.).

[3] The plaintiff received a discharge of dischargeable debts on August 12, 2010.  *See* 11 U.S.C. § 727(b); *see also* ECF No. 58 ("Order Discharging Debtor").

consolidated. *See supra* note 1. On November 9, 2010, the plaintiff commenced a third adversary proceeding, Ad. Pro. No. 10-5094, alleging various causes of action based on Connecticut common law and federal statutory law and again seeking to discharge his student loans ("Second Dischargeability Action").

On December 1, 2010, the plaintiff filed a motion in the district court to withdraw the reference of the Second Dischargeability Action. *See* 28 U.S.C. § 158(d). On December 21, 2010, he filed an amended motion in the district court to withdraw the reference of the First Dischargeability Action and the Stay Violation Action, but not the Second Dischargeability Action. The district court denied without prejudice the plaintiff's amended motion to withdraw the reference of the First Dischargeability Action, stating that the plaintiff "may elect to renew the motion when the case becomes ready for trial." The district court further denied with prejudice the motion to withdraw the reference of the Stay Violation Action. *See Desormes v. Charlotte School of Law, LLC, et al.*, No. 3:10-mc-184 (SRU), slip op. at 7 (D. Conn. Oct. 3, 2011).

On January 5, 2012, the Second Dischargeability Action was consolidated with the First Dischargeability Action and the Stay Violation Action. Thereafter, this court directed the plaintiff to file, by March 22, 2010, a consolidated complaint, incorporating all of his causes of actions against the defendants. (*See* ECF. No. 142.) On April 18, 2012, the defendants filed an answer and affirmative defenses. (*See* ECF No. 152.) After a May 10, 2012 hearing, the court entered a pretrial order which: (1) identified the issues for trial, *i.e.*, Count I: Automatic Stay Violation, and Count II: Student Loan Undue Hardship; (2) stated that "[a]ll discovery is completed and closed"; and (3) identified the plaintiff's and defendants' witnesses and exhibits. (*See* ECF No. 180.)

## Discussion

*Count I: Violation of Automatic Stay*

The predicate for the plaintiff's first count is § 362(k):

> (1) . . . [A]n individual injured by any *willful* violation of a stay provided by this section shall recover *actual* damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k) (emphasis added).

The plaintiff did not offer any evidence upon which the court could find a willful violation of the automatic stay. But, even if he had, the plaintiff did not offer a scintilla of evidence of *actual* damages from any alleged violation. *See In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990) ("[A]ny deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of *actual* damages." (emphasis added)).

*Count II: Undue Hardship*

Section 523(a)(8) is the predicate for the plaintiff's second count:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
> * * *
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for —
>   (A)  (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>       (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> (B) any other educational loan that is a qualified educational loan, as defined in section 221(d)(1) of the Internal Revenue Code [("IRC")] of 1986, incurred by a debtor who is an individual; . . .

11 U.S.C. § 523(a)(8). "Congress enacted § 523(a)(8) because there was evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and harm to future students as well as taxpayers." *Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 87 (2d Cir. 2000).

Section 523(a)(8)(A)(ii) defines a student loan as an "obligation to repay funds received as an educational benefit . . .".  The plaintiff asserts that the subject loan, evidenced by the Note, was not a student loan within the meaning of that section and should, therefore, be discharged.  In support of that claim, he argues that because the "indebtedness evidenced by th[e] Note shall be repaid immediately upon Maker's receipt of Title IV Funds"[4], he would not have a student loan obligation if such funding did not become available.  Note at 1 ("Repayment") (Pl.s' Trial Exhibit G).  The essence of that argument is that unless Title IV Funds became available to him, the plaintiff would get fee a free education.  That argument is unavailing.

The subject text in the Note relates to the timing of repayment, not the obligation to repay.  Moreover, the purpose of the loan was clearly "*for tuition and fees owed to Payee in connection with the educational services obtained by* <u>Kenneth Desormes</u>", *id.* (emphasis added).  That purpose was not affected by whether the plaintiff received Title IV Funding.  It is not insignificant that in the plaintiff's bankruptcy Schedule F ("Creditor's Holding Unsecured Nonpriority Claims"), the plaintiff listed the Note as the "2008 Promissory Note[,] *Tuition Debt*".  (Trial Exhibit. A at 2 (Sch. F) (emphasis added)).

Further, the fact that there was no evidence that the Note was "made, insured, or guaranteed by a governmental unit, or made under any program funded . . . by a governmental unit or nonprofit institution", § 523(a)(8)(A)(i), or was "a qualified education loan, as defined in section 221(d)(1) of the Internal revenue Code of 1986 . . .", § 523(a)(8)(B), does not eliminate it is a §523(a)(8) debt because that language appears in alternative provisions in subsection(8).  Thus, it is clear from the evidence adduced at trial that the Note is "an obligation to repay funds received as an educational benefit," § 523(a)(8)(A)(ii).  *See, e.g., In re Renshaw*, 222 F.3d at 87.  It

---

[4] Title IV is the Higher Education Act of 1965; it established the governmental federal student financial aid programs.  "Title IV Funding" is shorthand for these programs.  *See generally* http://studentaid.ed.gov/types#aid-from-the-federal-government (accessed Sept. 4, 2012).

should be paid absent a finding of undue hardship.

Undue hardship has been defined in the Second Circuit by the so-called *"Brunner"* test:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*In re Brunner*, 831 F.2d 395 at 396. (2d Cir. 1987). The plaintiff has the burden of proving by a preponderance of the evidence each prong of that test. *See In re Traversa*, 444 Fed. App'x 472, 474 (2d Cir. 2011); *Educational Credit Management Corp. v. Curiston*, 351 B.R. 22, 27 (D. Conn. 2006); *In re Stefenson*, Adv. Pro. No. 07-5023, 2008 WL 8812684, *1 (Bankr. D. Conn. Nov. 14, 2008). "The *Brunner* inquiry is fact intensive . . . ." *Curiston*, 351 B.R. at 27 (further quotation omitted). The plaintiff has not even attempted to satisfy the *Brunner* test.

## Conclusion

Finding the plaintiff has failed to sustain his burden of proving a willful violation of the automatic stay, or any actual damages even if he had, and an undue hardship warranting an exception to nondischargeability of his student loan,

IT IS ORDERED that judgment shall enter in favor of the defendants on Counts I and II.

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052. Fed. R. Bankr. P. 7052.

Dated this 18th day of September 2012 in Bridgeport, Connecticut.

By the court

*Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge